NelsON, J.,
delivered the opinion of the court.
Leonard Bowers died intestate, in March, 1864. Complainant and her son, William G. Bowers, were appointed administratrix and administrator of his estate. Leonard Bowers, at the time of his death, held three notes on John S. and William S. Thomas, amounting to about $1,375, and a note on John Alexander and G. T. Magee, to which the said Thomases were security, for $190. Mary Bowers being aged and unable either to read or write, her said son became the acting administrator of the estate. During his administration and on or about the 17th of May, 1865, he surrendered all the notes to W. S. Thomas, except the note on John Alexander and others, and at his request, William S. Thomas executed new notes, payable as follows; one to W. H. Nave, for $500; one to Isaac Lewis, for $100; one to B.. C. C. Hart, for $100; one to complainant for $500, and one to Daniel S. Nave, a son of complainant, for $176, as *555 stated in the bill, or $180 or $190, as stated in W. S. Thomas’s deposition. For the residue W. S. Thomas executed his note to W. G. Bowers, as he alleges, but it is charged in the bill that he retained it. William G. Bowers resigned his administration in July, 1865, and this bill is filed to compel the payment of the amount of the notes, with interest, which Leonard Bowers held at the time of his death, on the ground that they were surrendered to W. S. Thomas under duress. It is, alleged that Nave, Lewis and Hart used such force and violence towards William G. Bowers, that he was compelled to make the arrangement with William S. Thomas through fear.
It seems that William H. Nave’s still-house was burned during the civil war, by soldiers, who were aided in doing so by Leonard Bowers, in his lifetime, and that Nave was about to commence a suit against the personal representatives of Bowers, and that Nave also accused W. G. Bowers and the sons of Isaac Bowers, with threatening to hang his (Nave’s) son, in order to compel certain disclosures which they desired him to make. It was for these, injuries, real or supposed, that the note for $500 was executed. The note to Lewis was executed for damages, claimed by him on account of the destruction of his gun-smith’s tools by W. G. and Isaac Bowers, sons and heirs of the intestate. The note to Hart was executed in consideration of damages claimed by him for the destruction of his growing crop of wheat, upon which he alleged Leonard Bowers, in his lifetime, pastured his cattle.
*556 The charges as to duress are fully met and denied in the answers, and it is insisted, especially, by Thomas, that if any force or violence was used, he had no knowledge or information in regard to it; that he acted upon the special request of William G. Bowers, and under the full belief that lie, as administrator, had the right to control and dispose of the notes.
It was held by the Chancellor, that W. S. Thomas, Nave, Lewis and Hart conspired together to extort the arrangement from the fears of W. G. Bowers, and on this and other grounds he pronounced a decree in favor of complainant. The case is brought here by W. S. Thomas alone, on a writ of error.
There is some conflict in the evidence, but the proof shows that Nave, Lewis and Hart, each, had claims for damages and were about to commence suits; •that Hart's claim, on account of the destruction of his wheat, was arbitrated by It. J. Allen and Joseph P. Vanhose, at the request of W. G. Bowers and Hart, and that they awarded the damages at $100; that Bowers expressed his anxiety to effect a settlement with Nave without litigation, and requested two or three of his friends to aid him in bringing about a compromise; that Nave, Hart and Lewis went in company together, or met, at the house of W. S. Thomas; that Thomas desired to consult a lawyer as to whether W. G. Bowers had authority to collect the notes, but finally consented, on .the assurance of Bowers that he had the right to act as administrator, to do so; that, after they met and had some conver *557 sation, Bowers went off to his mother’s and got the notes and brought them back, and the adjustment was made by executing the new notes.
Erom these and other facts in the record, this court is of opinion that if "W. G. Bowers acted under duress in negotiating the arrangement with Thomas, (a point which we do not determine, but which' may be assumed, as the other parties do not appeal) it is reasonably certain that Thomas was ignorant of the fact and had no agency in bringing it about.
W. G. Bowers, as administrator, had the right to compromise or arbitrate any suit brought or threatened against him, in that character, on account of the acts of his intestate, and if he acted in good faith, such compromise will not be disturbed.
In this view, the compromises made by W. G;. Bowers, through Thomas, with "W. H. Nave and E. C. Hart, were within the scope of Bowers’ authority, as administrator, for the reason that the alleged causes of action accrued in the lifetime of his intestate; but the compromise with Isaac Lewis was on account of a trespass alleged to have been committed by W. G. Bowers and Isaac Bowers, and stands on a different footing. In the two cases first named, Thomas being innocent of any. fraudulent purpose and having no knowledge of the alleged duress, will be protected, because the administrator made a lawful appropriation of the assets.
In the case last named, the administrator committed a devastavit in applying the trust fund in his hands to the payment of his own liability, and Thomas, *558 having concurred, no matter liow ignorantly, in the misappropriation of the fund, must abide by the consequences of his own act.
It is stated in the answer of ¥m. S. Thomas and John S. Thomas, that the note for $1,000,' dafed September 12, 1861, and payable one day after date, was executed for Confederate money and bank notes; that they offered to pay the note in the same kind of money to Leonard Bowers and he refused to take tire money, although he agreed to take the same kind of money in payment of the note at the time the note was given. These statements are, to a greater or less extent, sustained by the evidence of Thomas M. Hilton, Joseph Phau, J. J. Cawood, Simeon Forbes and W. G. Bowers, though the latter states that they were given before the war, in lieu of Frederick Thomas’ notes for land. This statement is erroneous, as one of the notes was executed after the war.
The action of this court is to some extent embarrassed by the fact that none of the defendants but W. S. Thomas are before us. He is very clearly entitled to a reversal of that part of the Chancellor’s decree of March 24, 1870, in which, upon a mere suggestion that he had secured $500 of the amount decreed against him on land, it was ordered that John White and Washington Nelson, who are not parties to the suit, should be required to pay said sum to the Clerk and Master, or that the land should be sold.
Upon the eme as presented to this court, it will be decreed:
*559 1. That John S. and W. S. Thomas shall account > for the amount of the three notes executed to Leonard Bowers, less the difference' in value between bank and Confederate notes on the one side, and gold upon the other, at the time the notes, which matured after the commencement of the war, fell due, but before the passage of the legal tender act, and those falling due afterwards, making legal tender notes the standard of comparison.
2. That they shall be credited at a like valuation with all sums paid by them on the notes to ¥m. H. Nave, B,. C. Hart, Daniel Nave and the complainant, but not for any thing paid on the note to Isaac Lewis.
3. That they shall be credited with the amount of Thomas’ account against the estate of Leonard Bowers, mentioned in their joint answer, as having been allowed by W. G. Bowers, administrator, at the tiráe the notes were surrendered.
4. That an account shall be taken to ascertain the amount of indebtedness from John K. Miller, at the time of the commencement of this suit, to the end that the same may be rendered liable for any amount that may be found due from William S. Thomas, provided it shall • appear that process was served upon said Miller.
5. That further proofs may be heard as to the matters of account, and process issue from the Chancery Court for John K. Miller, as prayed in the bill, if it shall appear this has not been done.
6. That the costs of this cause in this court shall *560 be paid by complainant, and, so far as they accrued in the court below, as the Chancellor may direct.
The Chancellor’s decree as to William S. Thomas is reversed, and the cause remanded to the Chancery Court at Elizabethton for further proceedings in conformity to this decree.